UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY GORMAN,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT, WILLIAM LANSDOWNE, as an individual and Chief of Police of City of San Diego, MICHAEL AGUIRRE, as City Attorney of San Diego, and as an individual, OFFICER JAMES ZIRPOLOG #4310, OFFICER D. SPITZER #4665, OFFICER G. MACPHEE #4940, SERGEANT B. DARE #2438, individually and as peace officers, and DOES 1-15, inclusive,<br><br>　　　　　　　Defendants. | CASE NO. 08-cv-2345 - IEG (RBB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL**<br><br>[Doc. No. 107] |

　　　Presently before the Court is Plaintiff Jeffrey Gorman ("Plaintiff")'s motion for a new trial pursuant to Federal Rule of Civil Procedure 59. [Doc. No. 107.] For the reasons set forth below, the Court **DENIES** the motion.

## BACKGROUND

　　　Plaintiff, a paraplegic, was arrested for driving under the influence ("DUI") by San Diego Police Department officers on December 19, 2006 as a result of a traffic stop. [Doc. No. 40 at 2.] Plaintiff contended that during the course of his arrest, he was subjected to excessive force on three separate occasions. First, that his transportation in the backseat of a patrol car instead of a

wheelchair accessible vehicle while Officer James Zirpolo drove at excessive speeds constituted excessive force. [Doc. No. 38 at 2-3.] Second, that the officers pulling him out of the patrol car, laying him on the ground of the police department sally port, and conducting a forced blood draw constituted excessive force. [Id.] Third, that Officer Zirpolo yanking him out of the car and dropping him on the ground at the jail constituted excessive force. [Id.]

On December 18, 2008, Plaintiff filed a civil rights action against Defendants City of San Diego, the San Diego Police Department ("SDPD"), Chief of Police William Lansdowne ("Chief Lansdowne"), Michael Aguirre ("Aguirre"), Officer James Zirpolo ("Officer Zirpolo"), Officer D. Spitzer ("Officer Spitzer"), Officer G. Macphee ("Officer Macphee"), Sergeant B. Dare ("Sgt. Dare") alleging causes of action for (1) violation of his right to be free from excessive force and false arrest under the Fourth Amendment pursuant to 42 U.S.C. § 1983; (2) municipal liability pursuant to 42 U.S.C. § 1983 for the unlawful policy, custom, or habit of permitting or condoning excessive force by police officers; and (3) violation of California Civil Code §§ 51, 51.7, 52(b), and 52.1(b). [Doc. No. 1, Compl.] Prior to the pre-trial conference, Plaintiff dismissed Defendant Aguirre and abandoned his claims for false arrest and violation of California Civil Code §§ 51, 51.7, 52(b), and 52.1(b). [Doc. No. 38 at 4.]

The Court held an eight-day jury trial in this matter beginning on February 7, 2012. [Doc. No. 86.] At the conclusion of Plaintiff's case in chief, on February 10, 2012, the Court granted Defendant's oral Rule 50(a) motion and dismissed Defendants City of San Diego, SDPD, and Chief Lansdowne. [Doc. Nos. 89, 100.] The trial proceeded with the remaining Defendants. On February 16, 2012, the jury returned a special verdict finding that none of the Defendants' actions constituted unreasonable or excessive force. [Doc. No. 99.] On February 22, 2012, the Court entered judgment in favor of Defendants and against Plaintiff. [Doc. No. 101.]

By the present motion, Plaintiff moves for a new trial pursuant to Federal Rule of Civil Procedure 59. [Doc. No. 107.] Plaintiff moves for a new trial on eleven different grounds. [See id.] The Court addresses each of these grounds below.

///

///

# DISCUSSION

## I. Legal Standard for a Motion for New Trial

Under Federal Rule of Civil Procedure 59(a)(1), the Court may grant a new trial "on all or some of the issues . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," district courts are "bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Those grounds include (1) a verdict that is contrary to the weight of the evidence, (2) a verdict that is based on false or perjurious evidence, (3) that damages are excessive, or (4) to prevent a miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007). Erroneous evidentiary rulings and errors in jury instructions are also grounds for a new trial. See Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995); Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990).

"The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" Murphy, 914 F.2d at 186. In addition, due to the inherently fact-specific nature of the Rule 59(a) inquiry, a district court's order denying a motion for a new trial will generally stand on appeal provided there is some reasonable basis for the jury's verdict. Molski, 481 F.3d at 729. It is reversible error, however, for a district court to deny a Rule 59(a) motion for new trial where there is an "absolute absence of evidence to support the jury's verdict." Id.

## II. Analysis

### A. Defendants' Failure to Provide Plaintiff With A Reasonable Accommodation

Plaintiff argues that a new trial is justified because the Defendants were required as a matter of law to provide him with a reasonable accommodation when transporting him. [Doc. No. 107-1 at 2-5.] Specifically, Plaintiff argues that it is undisputed that he was transported from the scene of his arrest by a patrol car rather than a wheelchair accessible vehicle, and therefore, he was subjected to excessive force as a matter of law. [Id.] In response, Defendants argue that Plaintiff did not bring any claims for violation of the ADA at trial and whether the ADA was violated does not further the determination of whether the Defendants used excessive force. [Doc. No. 108 at 3-

5.]

In support of his argument, Plaintiff cites to the American with Disabilities Act ("ADA") and cases dealing with ADA claims. [Doc. No. 107-1 at 2-4.] The Americans with Disabilities Act was enacted "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Title II of the ADA provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entities" under Title II include law enforcement officers. See Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). "Generally, public entities must 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)).

However, Plaintiff did not bring any claims against the Defendants for violation of the ADA nor did Plaintiff attempt to amend his complaint to bring a claim for violation of the ADA. [See generally Compl.; Doc. No. 38; Doc. No. 40.] Plaintiff only brought claims at trial for violation of his Fourth Amendment right to be free from unreasonable search and seizure, specifically the right to be free from excessive force. [See Doc. No. 40 at 4 ("The following issues of law and no other remain to be litigation [*sic*] upon trial: 1.    Whether or not the Defendants used excessive force upon Plaintiff in violation of the Fourth Amendment. . . . 3.   Whether the City of San Diego, through its Police Department, has customs, policies, or practices that condone or permit excessive force").]

Claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in Graham v. Connor, 490 U.S. 386 (1989). The reasonableness of a seizure turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them," id. at 397, which is determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests

1  against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v.
2  Garner, 471 U.S. 1, 8 (1985)) (internal quotation marks omitted).  Stated another way, it is
3  determined by balancing "the amount of force applied against the need for that force." Meredith v.
4  Erath, 342 F.3d 1057, 1061 (9th Cir. 2003).

      Plaintiff has not provided the Court with any authority holding that a violation of the ADA necessarily also constitutes a violation of the right to be free from excessive force under the Fourth Amendment.  To the contrary, case law holds that a violation of a state or federal law is not necessarily a violation of the constitution.  See Lone Star Sec. & Video, Inc. v. City of L.A., 584 F.3d 1232, 1236-37 (9th Cir. 2010).  In addition, it is "the Ninth Circuit's position that a § 1983 claim cannot be used to enforce rights created by the ADA, a statutory scheme that already includes comprehensive remedial measures." Gallagher v. San Diego Unified Port Dist., 2009 U.S. Dist. LEXIS 30060, at *6 n.3 (S.D. Cal., Apr. 6, 2009) (citing Vinson v. Thomas, 288 F.3d 1145, 1155-1156 (9th Cir. 2002)).  Therefore, even assuming Plaintiff is correct and the evidence at trial showed that the Defendants violated the ADA as a matter of law by failing to provide him with a reasonable accommodation, this is still insufficient to show that the Defendants were liable for excessive force.  In addition, Plaintiff has not provided the Court with any authority holding that the failure to transport a paraplegic in a wheelchair accessible vehicle necessarily constitutes excessive force.  Accordingly, the Court declines to grant Plaintiff a new trial on this ground.

      B.      The Exclusion of Reference to the ADA

      Plaintiff argues that the Court erred in granting Defendants' motion to preclude Plaintiff from making any reference to the ADA at trial.  [Doc. No. 107-1 at 5-6.]  As explained in the prior section, Plaintiff did not bring any claims for violation of the ADA.  In addition, a violation of the ADA is not necessarily a violation of the Constitution.  See Lone Star Sec. & Video, 584 F.3d at 1236-37.  Therefore, whether Defendants violated the ADA was not relevant to Plaintiff's claims for violation of his Fourth Amendment right to be free from excessive force.

      In addition, even if evidence that the Defendants' conduct violated the ADA was probative of the excessive force inquiry, any probative value it might have would be substantially outweighed by the danger of confusing the issues and misleading the jury into possibly thinking

that violation of the ADA necessarily also constitutes a violation of the Fourth Amendment. Therefore, the evidence was also properly excluded under Federal Rule of Evidence 403. [Doc. No. 115 at 21:19-22:11.] Accordingly, the Court did not err in precluding Plaintiff from referencing the ADA during the trial, and the Court declines to grant Plaintiff a new trial on this ground.

### C. The Dismissal of the City of San Diego and Chief Lansdowne

Plaintiff argues that the Court erred in dismissing Defendants the City of San Diego and Chief Lansdowne. [Doc. No. 107-1 at 8-9.] Plaintiff argues that he should have been allowed to proceed on his Monell claim against them because there was evidence that the City of San Diego did not have a policy that complied with ADA standards. [Id.] Defendants argue that there was no evidence presented at trial showing that the City of San Diego or Chief Lansdowne had a policy of condoning excessive force. [Doc. No. 108 at 7-8.]

There is no respondeat superior liability under 42 U.S.C. § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). Instead, a government entity can only be held liable under section 1983, if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). In order to establish liability for governmental entities under Monell, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).

Again, Plaintiff must understand that there is a difference between an ADA claim, which he did not bring, and an excessive force claim, which he did bring. Even assuming Plaintiff is correct that there was evidence presented at trial showing that the City of San Diego had a policy in place that failed to comply with ADA standards, this is insufficient to show the policy deprived Plaintiff of his right to be free from excessive force. See supra section II.A. The only evidence related to excessive force that was presented during Plaintiff's case-in-chief was the circumstances

1  surrounding Plaintiff's arrest and transportation on December 19, 2006.  The actions of non-policy
2  making police officers on one day are insufficient to establish a custom, policy, practice or
3  procedure.  See, e.g., Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008).
4  Therefore, the Court properly dismissed Plaintiff's Monell claims against the City of San Diego
5  and Chief Lansdowne after the close of Plaintiff's case.

6        Moreover, even if the Court incorrectly dismissed the City of San Diego and Chief
7  Lansdowne prior to juror deliberations, these two Defendants still would have been dismissed once
8  the jury rendered its verdict.  The jury found that none of the officers were liable for excessive
9  force. [Doc. No. 99.]  A public entity cannot be found liable under Monell when a jury has
10 concluded that none of its officers inflicted constitutional harm.  See Los Angeles v. Heller, 475
11 U.S. 796, 799 (1986).  Accordingly, the Court declines to grant Plaintiff a new trial on this ground.

12       D.    The Reasonableness of the Blood Draw

13       Plaintiff argues that the blood draw performed on him was objectively unreasonable under
14 the Fourth Amendment as a matter of law. [Doc. No. 107-1 at 6-7.]  Plaintiff argues it was
15 undisputed that the officers placed Defendant on the garage floor of the station to perform the
16 blood draw in violation of department procedure, Plaintiff was stuck with needles for 10 minutes
17 in order to extract sufficient blood, and the nurse that performed the blood draw did not wash her
18 hands prior to the blood draw although she wore gloves. [Id.]  In response, Defendants argue that
19 the jury's verdict was supported by substantial evidence. [Doc. No. 108.]

20       A forced blood draw can violate a person's Fourth Amendment rights if it was
21 unreasonable under the circumstances.  See Schmerber v. California, 384 U.S. 757, 771-72 (1966).
22 Specifically, the blood draw must not be "conducted in an unnecessarily cruel, painful, or
23 dangerous manner," Thompson v. City of Los Angeles, 885 F.2d 1439, 1447 n.7 (9th Cir. 1989),
24 overruled on other grounds by Bull v. City & County of San Francisco, 595 F.3d 964, 981 (9th
25 Cir. 2010) (en banc), and it must "be taken by trained medical personnel in accordance with
26 accepted practices." United States v. Chapel, 55 F.3d 1416, 1418 (9th Cir. 1995) (en banc)
27 (quoting the original panel opinion); see also Schmerber, 384 U.S. at 771 (finding no Fourth
28 Amendment violation where the blood draw "was taken by a physician in a hospital environment

according to accepted medical practices").

At the trial, the jury heard testimony from the police officers and Defendant's expert stating that placing someone on the ground to perform a blood draw is a practice that is used by the San Diego Police Department and other agencies such as the California Highway Patrol. The jury was also presented with evidence showing that Ms. Solomon, the medical technician who performed the blood draw, was a foreign medical surgeon with 13 years of experience, was a contract phlebotomist, and used medical hand sanitizer prior to performing the procedure. Ms. Solomon testified that she cleansed Plaintiff's arm appropriately and never touched it to the ground, and placing Plaintiff on the ground was for his safety and the safety of the officers. Therefore, the jury's verdict was supported by substantial evidence, and it was not contrary to the clear weight of the evidence. Accordingly, the Court declines to grant Plaintiff a new trial on this ground. See Molski, 481 F.3d at 729.

E.    The Exclusion of the "Shocks the Conscience" Standard From the Jury Instructions

Plaintiff argues that the Court erred in declining to include the "Shocks the Conscience" standard from Rochin v. California, 342 U.S. 165 (1952) when instructing the jury regarding the blood draw. [Doc. No. 107-1 at 7-8.] In response, Defendants argue that the "Shocks the Conscience" jury instruction was unnecessary. [Doc. No. 108 at 6-7.]

At the trial with respect to the forced blood draw, the Court gave the following special jury instruction:

> Under the Fourth Amendment, the procedures used to forcibly extract blood from an arrested person must be reasonable. The blood draw must not be conducted in an unnecessarily cruel, painful, or dangerous manner. The blood draw must be taken by trained medical personnel in accordance with accepted practices.

[Doc. No. 95, Instruction No. 18.][1] This jury instruction was based on Supreme Court and Ninth Circuit precedent regarding when a forced blood draw can violate a person's right to be free from unreasonable search and seizure under the Fourth Amendment. See Schmerber, 384 U.S. at 771-72; Chapel, 55 F.3d at 1418; Thompson, 885 F.2d at 1447 n.7.

Plaintiff argues that the Court should have included the "Shocks the Conscience" standard

---

[1] In addition, the Court gave Ninth Circuit Model Civil Jury Instruction 9.22 on excessive force. [Doc. No. 95, Instruction No. 16.]

1  from Rochin in addition to this instruction. [Doc. No. 107-1 at 7.] The "Shocks the Conscience"
2  standard from Rochin is used in determining whether government conduct violates the Due
3  Process clause of the Fourteenth Amendment. See, e.g., Crowe v. County of San Diego, 608 F.3d
4  406, 431 (9th Cir. 2010) ("The Due Process Clause of the Fourteenth Amendment protects against
5  any government conduct that 'shocks the conscience.'" (quoting Rochin, 342 U.S. at 172)); United
6  States v. Zimmerman, 514 F.3d 851, 855 (9th Cir. 2007) (stating that "even a compelled blood
7  draw doesn't 'shock[ ] the conscience,' so as to violate the Due Process Clause" (quoting Rochin,
8  342 U.S. at 172)). However, Plaintiff did not bring any claims against the Defendants for violation
9  of his due process rights under the Fourteenth Amendment. [See generally Compl.; Doc. No. 38;
10 Doc. No. 40.] Plaintiff only brought claims at trial for violation of his Fourth Amendment right to
11 be free from unreasonable search and seizure, specifically the right to be free from excessive force.
12 [See Doc. No. 40 at 4 ("The following issues of law and no other remain to be litigation [*sic*] upon
13 trial: 1.     Whether or not the Defendants used excessive force upon Plaintiff in violation of
14 the Fourth Amendment. . . . 3.     Whether the City of San Diego, through its Police
15 Department, has customs, policies, or practices that condone or permit excessive force").]
16 Therefore, the Court instructed the jury with the proper standard, and it would have been error for
17 the Court to include an instruction containing the "Shocks the Conscience" standard. Accordingly,
18 the Court declines to grant Plaintiff a new trial on this ground.

19       F.     Evidence of Plaintiff's Arrest for DUI

20       Plaintiff argues that the defense spent an inordinate amount of time covering Plaintiff's
21 arrest for a DUI, his blood alcohol level, his delay in entering a plea in his criminal prosecution,
22 and the argument that Plaintiff did not take responsibility for his crime. [Doc. No. 107-1 at 9-10.]
23 Plaintiff argues that this constituted a re-prosecution of Plaintiff's DUI case and served no purpose
24 other than to inflame the jury. [Id.] In response, Defendants argue that the verdict was properly
25 supported by the evidence and testimony presented at trial. [Doc. No. 108 at 8-9.]
26       Evidence of a plaintiff's intoxication is relevant in an excessive force case. See Boyd v.
27 City & Cnty. of San Francisco, 576 F.3d 938, 944 (9th Cir. 2009); Lopez v. Aitken, 2011 U.S.
28 Dist. LEXIS 16396, at *3-5 (S.D. Cal. Feb. 18, 2011); T.D.W. v. Riverside Cnty., 2010 U.S. Dist.

1 LEXIS 35821, at *8-11 (C.D. Cal. Mar. 11, 2010). In addition, it is also relevant to Plaintiff's
2 credibility. See, e.g., Rheaume v. Patterson, 289 F.2d 611, 614 (2d Cir. 1961) (stating that
3 evidence of a witness drinking during the time of the events was relevant to his credibility).
4 Therefore, Defendants could properly present evidence of Plaintiff's intoxication and his DUI
5 arrest to the jury, and it was not presented simply to inflame the jury. The evidence of Plaintiff's
6 delay in entering a plea was permissible as impeachment evidence in response to Plaintiff's
7 testimony that he took responsibility for his crime. In addition, Plaintiff has presented the Court
8 with no evidence showing that the jury's verdict was based solely on his conviction for DUI and
9 not based on all the other evidence that was presented at trial. Accordingly, the Court declines to
10 grant Plaintiff a new trial on this ground.

11      G.     The Exclusion of Missouri DUI Law

12 Plaintiff argues that the Court erred in granting Defendants' motion in limine to exclude
13 Plaintiff from referencing that Missouri law allows a person to refuse a blood test. [Doc. No.
14 107-1 at 10-11.] Defendants argue that whether Plaintiff believed he had a right to refuse a blood
15 draw under Missouri law is irrelevant to the jury's determination of whether the officers used
16 excessive force. [Doc. No. 108 at 9-10.]

17 However, the Court did not grant Defendants' motion in limine. The Court denied it and
18 allowed Plaintiff to testify that at the time of the incident, he thought he had a right to refuse the
19 blood draw because he has that right under Missouri law. [Doc. No. 70; Doc. No. 115 at 27:15-
20 27:17.] The Court explained that if Plaintiff presented this testimony then the defense would be
21 allowed to ask him how he knew he had that right under Missouri law.[2] [Doc. No. 115 at 27:17-
22 28:15; Doc. No. 116 at 51:17-22.] Plaintiff apparently did not want to have the defense ask this
23 question, so Plaintiff made a tactical decision and did not present this testimony at trial. [Doc. No.
24 116 at 51:23.]

25 Plaintiff argues that this was fundamentally unfair because there was no need to cross
26 examine him about how he knew Missouri law because all people are presumed to know the law.

---

28     [2] Plaintiff knew that he had that right under Missouri law because he was previously arrested for driving under the influence of narcotics in Missouri. [Doc. No. 115 at 27:11-12; Doc. No. 116 at 51:15-16.]

1  [Doc. No. 107-1 at 10-11.]  In support of this argument, Plaintiff cites to cases holding that
2  ignorance of law is not a defense to a criminal prosecution.  [Id.]  This argument has no merit.
3  Plaintiff wanted to testify that he had actual knowledge of Missouri law not that he should be
4  presumed to know Missouri law.  Therefore, it would have been proper to allow the defense to ask
5  him how he obtained this actual knowledge.  Accordingly, the Court declines to grant Plaintiff a
6  new trial on this ground.

7  H. The Exclusion of Testimony from Mara Gordon

8  Plaintiff argues that the Court erred in excluding the testimony of Mara Gordon.  [Doc. No.
9  107-1 at 11-12.]  Specifically, Plaintiff argues that he should have been allowed to present
10 testimony from Ms. Gordon stating that in 1999, Defendant Zirpolo arrested her, disregarded her
11 physical disability, and drove her to the police station in a frightening manner.  [Id.; Doc. No. 110
12 at 13.]  In response, Defendants argue that Ms. Gordon's testimony was properly excluded under
13 Federal Rules of Evidence 404(b) and 403.  [Doc. No. 108 at 10-11.]

14 The Court excluded the testimony pursuant to Federal Rule of Evidence 403.  [Doc. No.
15 93; Doc. No. 117 at 23:18-24:21.]  Rule 403 provides:  "Although relevant, evidence may be
16 excluded if its probative value is substantially outweighed by the danger of unfair prejudice,
17 confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time,
18 or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  The decision to admit or
19 exclude potentially prejudicial evidence under Rule 403 is committed to the sound discretion of
20 the trial court.  Boyd v. City & County of San Francisco, 576 F.3d 938, 948 (9th Cir. 2009).

21 The Court found that the testimony had little probative value given that it occurred eight
22 years prior to the incident at issue in this case.  [Doc. No. 117 at 21:23-23:4.]  The Court also
23 found that there was a great danger that the testimony would be unfairly prejudicial to the
24 Defendants and would cause jury confusion because admission of the testimony would lead to a
25 trial within a trial.  [Id. at 23:18-24:15.]  Therefore, the Court properly excluded the testimony
26 under Rule 403.  See Fed. R. Evid. 403; Duran v. City of Maywood, 221 F.3d 1127, 1133 (9th Cir.
27 2000); Tennison v. Circus Circus Enters., Inc., 244 F.3d 684, 690 (9th Cir. 2001).  Accordingly,
28 the Court declines to grant Plaintiff a new trial on this ground.

### I. The Exclusion of Testimony from Mary Prevost

Plaintiff argues that the Court erred in excluding the testimony of Mary Prevost, Plaintiff's attorney during his DUI prosecution. [Doc. No. 107-1 at 12.] Plaintiff argues Ms. Prevost's testimony would have explained why there was a long delay in time before Plaintiff pleaded guilty to his DUI. [Id.] In response, Defendants argue that the testimony was properly excluded because the parties stipulated that Plaintiff could testify, which he did, about the same facts regarding the delay. [Doc. No. 108 at 11-12.] In his reply, Plaintiff concedes that he was allowed to testify about the delay, but argues that the testimony from Ms. Prevost would have been more effective. [Doc. No. 110 at 13-14.]

The testimony of Ms. Prevost would have been cumulative of the testimony Plaintiff presented at trial. Therefore, the Court properly exercised its discretion and excluded Ms. Prevost's testimony. See Fed. R. Evid. 403. Moreover, "[a] new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." Ruvalcaba, 64 F.3d at 1328. Because Ms. Prevost's testimony would have been cumulative of other testimony, Plaintiff cannot show that he was "substantially prejudice" by the exclusion of her testimony. Accordingly, the Court declines to grant Plaintiff a new trial on this ground.

### J. Failure to Strike Two Jurors for Cause

Plaintiff argues that the Court erred in failing to strike two jurors for cause, who repeatedly stated that they would favor the police and could not be fair. [Doc. No. 107-1 at 12.] In response, Defendants argue that both jurors stated that they could be fair and impartial.[3] [Doc. No. 108 at 12.]

The Supreme Court has held that every litigant is entitled to a fair–but not perfect–trial. See McDonough Power Equip. v. Greenwood, 464 U.S. 548, 553 (1984). "One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'" Id. at 554. Even if only one juror is unduly biased or prejudiced, a litigant is denied this constitutional guarantee. United States v. Mitchell, 568 F.3d 1147, 1150 (9th Cir.

---

[3] Defendant also argues that Plaintiff did not move to strike either of these jurors for cause. [Doc. No. 108 at 12.] However, Defendant is incorrect. Plaintiff did move to strike the two jurors for cause during the voir dire proceedings. [Doc. No. 116 at 82:5-17.]

2009).

The Ninth Circuit has explained that juror bias can be analyzed under two theories, actual bias or implied bias. Actual bias is found where "a prospective juror states that he can not be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) (en banc). Giving undue weight to the testimony of a law enforcement officer could constitute actual bias. See Darbin v. Nourse, 664 F.2d 1109, 1114-15 (9th Cir. 1981). Implied bias is found "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990). However, the Ninth Circuit has cautioned that implied bias only occurs in "extreme" or "extraordinary" cases. Id. To succeed on a claim that a litigant's right to an impartial jury was denied because a juror was biased, the movant bears the burden of demonstrating that the challenged juror was biased, and that the district court erred in failing to strike her from the jury. Mitchell, 568 F.3d at 1151.

Plaintiff argues in a conclusory manner that the jurors stated they could not be fair. However, Plaintiff does not support his argument with any citation to the record or quotation of what was actually said at voir dire or even indicate the names of the two jurors that should have been stricken. The Court assumes Plaintiff is referring to jurors number four and five. Although both of these jurors stated that they respected law enforcement officers, both jurors stated in open court that they would be able to set aside any initial bias they might have, consider all the evidence, and be fair and impartial in deciding the case. [Doc. No. 116 at 55:23-56:1, 66:13-68:25, 78:19-81:12.] Therefore, Plaintiff has failed to meet his burden of showing that the two challenged jurors were biased. See Mitchell, 568 F.3d at 1151. Accordingly, the Court declines to grant Plaintiff a new trial on this ground.

///
///
///
///

## CONCLUSION

For the above reasons, the Court **DENIES** Plaintiff's motion for a new trial.

**IT IS SO ORDERED.**

**DATED:** May 18, 2012

**IRMA E. GONZALEZ**
**United States District Judge**